IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAWRENCE H. GUETTLER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11-cv-573-WHA |
| | ) | (WO) |
| THE CITY OF MONTGOMERY, | ) | |
| A Municipal Corporation, DORIAN | ) | |
| BRUNSON, JERRY PETTY, | ) | |
| and MAJOR GOLDEN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Defendants,

City of Montgomery ("City"), Dorian Brunson ("Brunson"), Jerry Petty ("Petty"), and Major

Golden ("Golden")[1] on February 16, 2012 (Doc. # 21).  The Plaintiff, Lawrence Guettler, Jr.

("Guettler"), filed a Complaint (Doc. # 1) on July 15, 2011 alleging the following: Count I – a

Fifth Amendment taking without compensation claim brought against the City of Montgomery

pursuant to 42 U.S.C. § 1983, Count II – a Fourth Amendment illegal seizure claim brought

---

[1] According to the Defendants' Brief in Support of Summary Judgment (Doc. # 22 at 2), Major Golden was deceased at the time this suit commenced and was never served with the Complaint.  The Plaintiff did not respond to this statement in its Response Brief.  Accordingly, the court will assume that Golden was deceased prior to the filing of the Complaint, and therefore, is dismissed as a party to this suit.  *See*, *A.E. v. M.C.*, ___ So. 3d ___, No. 2101154 and 2101173, 2012 WL 1237762 at *7 (Ala. Civ. App. April 13, 2012) ("'[A] dead person is a nonexistent entity and cannot be a party to a suit. Therefore, proceedings instituted against an individual who is deceased at the time of the filing of suit are a nullity. Such proceedings are void ab initio and do not invoke the jurisdiction of the trial court.'") (quoting *Noble v. Corkin*, 717 A. 2d 301, 302–03 (1998)).

against the City of Montgomery pursuant to 42 U.S.C. § 1983, Count III – a Fourteenth

Amendment Due Process and Equal Protection claim brought against the City of Montgomery

pursuant to 42 U.S.C. § 1983, Count IV – a Fifth Amendment taking without compensation

claim brought against Brunson and Petty in their individual and official capacities[2] pursuant to

42 U.S.C. § 1983, Count V –  a Fourth Amendment illegal seizure claim brought against

Brunson and Petty in their individual and official capacities pursuant to 42 U.S.C. § 1983, Count

VII[3] – a Fourteenth Amendment Due Process and Equal Protection claim brought against

Brunson and Petty in their individual and official capacities pursuant to 42 U.S.C. § 1983, and

Count VIII – a state law trespass claim brought against all the Defendants.  Guettler filed a

Response to Defendants' Motion for Summary Judgment (Doc. # 24) on March 9, 2012, and the

Defendants filed a Reply to Guettler's Response (Doc. # 25) on March 16, 2012.  Also, pursuant

to the court's April 26, 2012 Order (Doc. # 30), Guettler filed a Supplemental Brief (Doc. # 31)

on May 4, 2012 to address issues raised by the court.

---

[2] Although Plaintiff's Complaint is silent as to which capacity Brunson and Petty are
being sued, the dispositive test for determining in which capacities those individuals are being
sued is to look at the nature of the proceedings.  *See Jackson v. Georgia Dept. Of Transp*., 16
F.3d 1573, 1575 (11th Cir. 1994) ("When it is not clear in which capacity the defendants are
sued, the course of proceedings typically indicates the nature of the liability sought to be
imposed.") (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)).  Given that the
Plaintiff refers to the actions taken by the Defendants in their official capacity and that the
Defendants raised the defense of qualified immunity, which only applies to individual capacity
claims, it is clear to the court that the claims are proceeding against Brunson and Petty as to both
their invidivual and official capacities.

[3] Plaintiff's Complaint does not contain a Count VI.

The court has federal question subject matter jurisdiction over the federal claims and supplemental jurisdiction over the state law trespass claim. *See* 28 U.S.C. § 1331, 28 U.S.C. § 1367.

For the reasons to be discussed, the Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## III.  <u>FACTS</u>

The following is an account of the relevant facts with all justifiable inferences drawn in favor of Guettler:

Guettler owned a residence in Montgomery, Alabama at 104 E. Woodland Drive.  On or about October 22, 2008, Defendant Petty, a building inspector for the City, received a citizen complaint regarding Guettler's property on Woodland Drive.  Petty inspected and photographed the property on the same day he received the complaint.  According to the Defendants, after the inspection a letter which explained that the owner of the property had 45 days to demolish the property (a "45-day notice") was sent to the Woodland Drive address and a placard was posted on the Woodland Drive property in order to notify the owner that the property was deemed unsafe.

It was not until November 19, 2008, that the Defendants pulled the county tax records and the warranty deeds for the Woodland Drive property and discovered that Guettler was the owner of the Woodland Drive property, but that his address was 1802 Madison Avenue,

4

Montgomery, Alabama 36107.  Therefore, the Defendants were unable to properly notify Guettler until some time after November 19, 2008.

Guettler explains in his brief that he went to the Woodland Drive property on the night of November 19, 2008, after a late night of work.  When he arrived there, he checked the mail and then proceeded to bed.  He slept later than usual on November 20, and when he was leaving the Woodland Drive property that day, he discovered a placard that recently had been attached to the front door of the house.  The placard contained a notification that the building had been deemed unsafe for human occupancy pursuant to § 44-2006 of the Montgomery City Building Code, and that it would be unlawful to occupy the home or to remove the placard.  The placard was signed by Defendant Petty and dated October 22, 2008.  Despite the date on the placard, this was the first notice that Guettler had received about the Woodland Drive property's condition.

On December 2, 2008, the Defendants sent Guettler another 45-day notice, this time by certified mail.  The notice was mailed to both the Woodland Drive address and Guettler's Madison Avenue address.  The Defendants also attached this notice to the Woodland Drive property in plain view.  The content of this notice was that the Woodland Drive property should be demolished within 45 days pursuant to the Code of Alabama § 11-53B-1, *et seq*., instead of § 44-2006 of the Montgomery City Building Code as had been stated in the notice posted earlier.  The notice also explained that Guettler could file an objection with the City Council ("Council") as to the City's Chief Building Official's findings.  On December 3, 2008, Guettler discovered this notice placard stapled on top of the first one.

On December 4, 2008, Guettler received the certified mail delivery notice, and on the next day, December 5, he retrieved the certified letter sent by the Defendants on December 2.

The letter contained a copy of the Demolition Order which had been previously stapled to the Woodland Drive property. It also contained a structure inspection sheet which contained a single complaint, "4. (X) Structure not secure – Entry may be made through open or unlocked doors, windows." This letter was signed by Major Golden and included his title: Assistant Chief Housing Code Inspector.

Guettler appealed the decision of the city building officials and appeared before the City Council on January 6, 2009, to raise his contentions. A transcript of his testimony from that hearing is before the court now. He explained that he did not receive notice from the City until November 20, 2008, and that the notice on the home was backdated to October 22, 2008. He explained that there is no way that the house was not secure, but he did concede that he was having to utilize plywood in place of windows since the windows were constantly being broken by third parties. He explained that he had taken pictures of different parts of his home as instructed by the December 5, 2008 certified letter he received from the City, and he provided them to the Council. He concedes that some of the window sills were rotten and that some of the fascia board was in bad shape. He also voiced his complaint as to the process for informing him that his property was to be demolished, and he asked what needed to be done in order to fix the home.

After Guettler testified, Major Golden testified and provided reasons for why the Woodland Drive property was to be demolished, and explained the notice process that the Defendants employed in informing Guettler. He showed his report to the Council's acting president, Martha Roby. Guettler, however, was not allowed to see Golden's file during the hearing. During the hearing, Golden testified that the Woodland Drive property had a broken

window repaired with plywood which allowed entry.  He also testified that the Woodland Drive property was in disrepair, neglect, and blight and showed pictures to the Council to demonstrate this.  Golden also provided pictures of some of the repairs that Guettler had made.  These repairs were limited to Guettler filling the cracks in the building, specifically the chimney, with spray foam which Golden explained did not meet the building code requirements and which Guettler admitted would not support the chimney.  Golden also testified that notice was left on the property in October, taken off, and then was reestablished later.

Councilwoman Roby asked Guettler if he actually lived in the Woodland Drive property, and he said "not in a legal sense, no."  Guettler provided testimony after Golden had testified, and in that testimony, Guettler explained that one of the pictures Golden provided had to have been taken after December 24, 2008 because the hole in the window in the picture did not happen until then.  Because of the factual inaccuracies stated by Golden, Guettler argued during the hearing that Golden had provided Roby with false information.

At the close of the hearing, Roby asked Guettler if he intended to bring the building up to code, and Guettler responded, "I don't believe it's in violation of code now but I am no authority."  Guettler also added that he did not "intend to jack up the fireplace."  Roby explained to Guettler that "we have heard your appeal.  You will be back before the Council in 30 days."

Guettler never received a detailed list of everything that was wrong with his home, and the City never advised him as to the specific date that his property would be destroyed.  The Council also did not have Guettler before them again thirty days after the January 6, 2008 hearing.  He also testified that he does not believe that the Council made a decision as to his property during the January 6, 2008, meeting, and the transcript from the hearing appears to

confirm this.  He assumed, since three or four months passed by without hearing from the Council, that his efforts at the January 6, 2008 meeting saved his home.

Because of the poor quality of the January 6, 2008 hearing's transcript, it is unclear to the court what Roby told Guettler other than that he would be back before them again in 30 days.

On January 7, 2009, one day after the hearing, Brunson and Golden went to Guettler's property and recorded that "owner wants to rehab, but no work has started."

On May 19, 2009, during the Council's regular public meeting, the Council decided to demolish four houses on Woodland Drive, including Guettler's property.  Guettler was not given notice that demolition of the house would be taken up at the meeting, and the City did not advise Guettler that it had taken that action.  The City did not inform Guettler that on August 12, 2009, Brunson approved the bid for demolition of Guettler's property or that on August 14, 2009, the property was demolished.  Guettler contends that he had no contact with any City employee between his January hearing and the August 14 demolition of his property.

## IV.  DISCUSSION

### A. Federal Claims Against Petty and Brunson

The Plaintiff has alleged a Fourth Amendment claim, a Fifth Amendment claim, and a Fourteenth Amendment claim against Petty and Brunson in both their individual and official capacities.  The court will first address the claims against Brunson and Petty in their individual capacities, and will then turn to the suits against them in their official capacities.

### 1. Individual Capacity

In response to the claims against them in their individual capacities, these Defendants raise the defense of qualified immunity.  For the reasons to be discussed, the Defendants Brunson and Petty are due summary judgment in their favor as to the claims raised against them in their individual capacities.

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).  As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.  *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).  Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler*  323 F.3d 872, 878 (11th Cir. 2003).

 Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *United States v. Lanier*, 520 U.S. 259, 270 (1997).  In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their

conduct violates clearly established law.  First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, <u>even in the total absence of case law</u>." *Id*. at 1350 (emphasis in original).  The Eleventh Circuit considers a case falling into this category an "obvious clarity case."  *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . that are not tied to particularized facts."  *Id.*  at 1351.  In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual situation.  *Id.*  "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation," thus these decisions can "clearly establish law applicable in the future to different sets of detailed facts."  *Id.*

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case.  *Id.*  With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances."[4]  *Id.*  If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted.  *Id.* at 1352.

In this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or when relevant the

---

[4] The Eleventh Circuit noted that most case law will fall into this third category. *Vinyard*, 311 F.3d 1351–52.

highest court of the state where the case arose. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950,

953 (11th Cir. 2003).

Turning to the present case, the Plaintiffs have failed to point to any case law which

demonstrates that city inspectors who act pursuant to a city council order to destroy a piece of

property have violated any constitutional right. Guettler maintains in his brief that there exists

"bright line clearly established" law as to Brunson and Petty's constitutional violations, but he

fails to cite any relevant cases.  Instead, he relies on *Ellis v. City of Montgomery*, 460 F. Supp. 2d

1301 (M.D. Ala. 2006) and *Thomas v. Freeman Wrecking Co., Inc.*, 388 So. 2d 968 (Ala. 1980).

Neither of those cases stand for the proposition that city inspectors who make inspections on a

home and then subsequently follow a city council's order to demolish a home violate a clearly

established constitutional right.  Instead, *Ellis* was resolved based on a finding by the court that

the use of tax records was not an appropriate means of notifying a property owner that his

property was unsafe especially in light of alternative "highly practical options for employing

notice."  *Ellis*, 460 F. Supp. 2d at 1308.

The *Thomas* case is similarly unavailing to Guettler.  In that case, the Alabama Supreme

Court explained that even though a property owner had actual notice that her property was a

public nuisance and would be destroyed without compensation, the notice was insufficient

because the city failed to strictly follow the statutory notice required in that case. *Thomas*, 388

So. 2d at 970.  In other words, "[w]here the giving of notice is relied on to sustain forfeiture or

divestiture of one's rights, statutory direction as to how such notice shall be given must be

strictly complied with." *Id.*

11

Moreover, the court finds that the issuing of a warrant by a neutral magistrate and the subsequent execution of that warrant by a police officer to be a useful analogous situation.  The Supreme Court has said that "[o]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."  *U.S. v. Leon*, 468 U.S. 897, 921 (1984) (quoting *Stone v. Powell*, 428 U.S. 465, 498 (1976) (Burger, C.J., concurring)).  Although the Supreme Court was speaking in the context of the exclusionary principle, the Court's language is still persuasive because it supports a finding that a city inspector's actions are reasonable when he acts pursuant to city council order just as a law enforcement officer's actions are reasonable when acting on a warrant issued by a neutral magistrate.

Because the Plaintiff has not shown any of the three ways for establishing "fair notice," he has not established that reasonable city inspectors would be on notice that the conduct of the Defendants would violate a citizen's Fourth, Fifth, or Fourteenth Amendment rights.  Therefore, he has failed to defeat Defendants' qualified immunity defense as to all three federal law claims, and summary judgment will be granted in favor of the Defendants as to Counts IV, V, and VII.

## 2.  Official Capacity

"A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) (citing Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999)).  "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)."

12

*Busby v. City of Orlando*, 931 F.2d 764, 776 ( 11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  The entity which employs Brunson and Petty is the City, and therefore, any claim against these individuals in their official capacity is really a suit against the City.

Because the City has already received notice of this matter and is, indeed, already a party to the present suit, the suits against Brunson and Petty in their official capacity are redundant. Accordingly, the court will dismiss those claims with prejudice.

### B. Federal Claims Against the City

#### 1. Fifth Amendment Claim

The text of the Fifth Amendment, "nor shall private property be taken for public use, without just compensation," does not serve to prevent the government from taking public property, but merely limits "the exercise of that power." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987)).  Essentially, the Fifth Amendment Takings Clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Lingle*, 544 U.S. at 537 (quoting *First English Evangelical Lutheran Church of Glendale*, 482 U.S. at 315).

Accordingly, "a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491 n. 22 (1987).  "[I]t is settled that in the exercise for the police power a state may take, damage, or destroy private property without compensation,

when the public necessity, the public health, or the public safety require it to be done." *Hulen v. City of Corsicana*, 65 F.2d 969, 970 (5th Cir.1933).[5]

The undisputed evidence before the court is that the City, through the Council's actions, determined to demolish Guettler's property pursuant to either § 44-2006 of the Montgomery Building Code or Alabama Code § 11-53B-1, *et seq.* Both of these laws are appropriately categorized as laws meant to abate public nuisances or to protect public health. Laws categorized as such do not invoke an individual's Fifth Amendment rights. *See Keystone Bituminous Coal Ass'n,* 480 U.S. at 491 n. 22; *Hulen*, 65 F.2d at 970. The Plaintiff has not cited any case law that would support the theory that his Fifth Amendment rights are violated by a city council that destroyed his property because it was a public nuisance, not in order to take it "for public use." This court does not sit as a court to review whether the property was actually a public nuisance. Even if it was not, it was not taken for public use. Accordingly, summary judgment is due to be granted in the City's favor as to Count I.

## 2. Fourth and Fourteenth Amendment Claims

In order for Guettler to prevail on his Fourth Amendment claim, he must demonstrate that the seizure of his property was unreasonable. *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 61-62 (1992) ("Whether the Amendment was in fact violated is, of course, a . . . question that requires determining if the seizure was reasonable." ). A central factor relied on by courts facing facts similar to Guettler's case is whether the plaintiff was afforded procedural due process before losing his property. *See Freeman v. City of Dallas*, 242 F.3d 642, 654 (5th Cir. 2001)

_____

[5] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

14

("Whatever else the City's enforcement of its municipal habitation code might be, it is sufficiently hedged about by published standards, quasi-judicial administrative proceedings, and flexible remedies that it is not *arbitrary*.") (emphasis in original); *Samuels v. Meriwether*, 94 F.3d 1163, 1168 (8th Cir. 1996) ("[the holdings of various Eighth Circuit and Supreme Court cases] suggest that an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests."); *Tribue v. Hough*, No. 304CV286/RV/EMT, 2006 WL 42163, at *6 (N.D. Fla. January 6, 2006) (explaining that "[o]ther courts have analyzed whether a nuisance abatement was 'carried out' in a reasonable manner by examining whether the property owners were afforded procedural due process before the destruction of their property, and whether any other unreasonable or arbitrary municipal actions are shown.").  Therefore, whether Guettler's Fourth Amendment claim continues past summary judgment necessarily relies on the court's determination as to Guettler's Fourteenth Amendment procedural due process claim.  Accordingly, the court will now address that claim.

A claim of denial of procedural due process "requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347-78 (11th Cir. 2006) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003)).  The Supreme Court has explained that "due process is a flexible concept that varies with the particular circumstances of each case." *Grayden*, 345 F.3d at 1232.  As such, the two frameworks that courts utilize when making a procedural due process determination–the *Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test and the *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)

totality of the circumstances approach–are both fact intensive inquiries.  Once the factual record

has been developed, the court must make a legal finding as to the constitutionality of the

government's actions in question.

　　　To reiterate, the party asking for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion," relying on submissions

"which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*,

477 U.S. at 323.  It is only once the moving party has met its burden that the nonmoving party

must "go beyond the pleadings" and show that there is a genuine issue for trial.  *Id.* at 324.

　　　Upon consideration of the evidentiary submissions submitted by the Defendants in this

case, the court finds Defendant City has failed to meet its burden as to Counts II and III.  More

specifically, the court finds that the evidence as to what notice was given to the Plaintiff

concerning the actual items wrong with his property and as to when subsequent Council

meetings would take place to vote on his property to be lacking.  Moreover, it is unclear what

was actually said to Guettler during the hearing because the transcript of that hearing is not clear.

There is also evidence in the record that Guettler was told that his home would be demolished

pursuant to two dissimilar laws: the November 20, 2008 notice listed § 44-2006 of the

Montgomery City Building Code while the December 2, 2008 notice listed Alabama Code § 11-

53B-1, *et seq*.  It is not clear from the evidence before the court that Guettler was not misled as

to when an adverse decision was made that he could have timely appealed to the state circuit

court pursuant to Alabama Code § 11-53B-4.  Considering all of this evidence together,

weighing it in a light most favorable to the non-moving party, the Defendant City has not

established that its actions, through the Council, are free of genuine issues of material fact and

that summary judgment is due to be granted in its favor.  It may be that further development of evidence at trial will show that due process was afforded the Plaintiff and that Guettler is not entitled to judgment as a matter of law on the issue, but that remains to be seen.

In addition to his procedural due process claim, Guettler has alleged a Fourteenth Amendment equal protection claim.  However, Guettler has failed to present any evidence to the court which would establish a prima facie case for an equal protection claim under either possible framework: the traditional claim or the class of one claim.  For example, Guettler has not identified to which protected group he belongs or any other similarly situated individual from outside that group who was treated more favorably as required to make out a traditional equal protection claim.  *See Amnesty Intern., USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). Moreover, although Guettler has provided the court with photos of other decaying homes near his property, he has failed to identify any specific individual who was similarly situated but treated more favorably as required to make out a class of one equal protection claim.  *See Maverick Enterprises, LLC v. Frings*, 456 Fed. App'x. 870, 872 (11th Cir. 2012) (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006)).  Therefore, based on the factual record before the court, Guettler cannot establish an equal protection claim, and the Defendant is due summary judgement in so much as Count III raises an equal protection claim.

To sum up the court's conclusions, genuine issues of material fact preclude the court from making legal conclusions as to Guettler's Fourth Amendment illegal seizure claim and his Fourteenth Amendment procedural due process claim.  Therefore, the court must deny the Defendants' Motion as to Count II and Count III, except in so much as Count III raises an equal protection claim.

C. State Law Trespass Claim Against All Defendants

The Defendant contends, and the Plaintiff concedes, that the City cannot be held liable for the intentional tort of trespass pursuant to Alabama Code § 11-47-190.  "[U]nder § 11–47–190, a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 743 (11th Cir. 2010); *see also Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998) (explaining that Alabama Code § 11-47-190 "absolves a city from liability for an intentional tort committed by one of its agents . . .").  Accordingly, the court will enter summary judgment in favor of the City as to the Plaintiff's state law trespass claim.

The parties contest, however, whether the claims against the individual Defendants, Brunson and Petty, should continue past summary judgment.  Brunson and Petty contend that a trespass claim against them should fail because they were acting lawfully at any time in which they entered Guettler's property, and the court agrees.  Under Alabama law, trespass is defined as "[a]ny entry on the land of another without express or implied authority." *Central Parking Sys. of Ala., Inc. v. Steen*, 707 So. 2d 226, 228 (Ala 1997) (quoting *Foust v. Kinney*, 80 So. 474, 475 (Ala. 1918)) (brackets in original).  Moreover, "[i]f a party enters property or possesses property under a legal right, entry or possession pursuant to that right cannot constitute a trespass." *Boyce v. Cassese*, 941 So. 2d 932, 945 (Ala. 2006).  Because the evidence before the court is that Brunson and Petty acted pursuant to both Alabama Code § 11-53B-1, *et seq*. and an order from the Council, the court finds that any entry or possession of Guettler's property by Brunson and Petty was done so pursuant to a legal right.  Therefore, their actions cannot, as a matter of law, constitute a trespass under Alabama law.

18

Therefore, summary judgment is due in the Defendants' favor as to Count VIII.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is ordered as follows:

1.  Summary Judgment is GRANTED as to Counts I, IV, V, VII, and VIII, and judgment will be entered in favor of Defendants as to those Counts.

2.  The case will proceed to trial as to Counts II and III against the City of Montgomery.

Done this the 4th day of June, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE